

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK ___ **CV-13- 3757**

CRYSTAL PERSAUD, individually and on behalf of
all others similarly situated,

CIVIL ACTION NO.:

Plaintiffs,

**COMPLAINT**

- against -

SPATT, J.

WAL-MART STORES, INC. and WAL-MART
STORES EAST, L.P. ,

Defendants. BROWN, M. J.

---

Plaintiff Crystal Persaud, by and through her undersigned counsel, as and for her

Complaint in this action, hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive and equitable relief as well as

monetary damages, to redress Defendants' unlawful employment practices, including their

unlawful discrimination against Plaintiff and others similarly situated in violation of the

Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, ("ADA"), and the New

York State Human Rights Law, New York Executive Law §§ 290.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343, as this action involves federal questions regarding the deprivation of Plaintiffs rights

under the ADA. The Court has supplemental jurisdiction over Plaintiffs related claims arising

under state law pursuant to 28 U.S.C. § 1367(a).

3.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

4.   Plaintiff has complied with all statutory prerequisites to her ADA claims.   A charge of discrimination was filed with the New York State Division of Human Rights on January 30, 2011.  Said charge was accepted for filing by Equal Employment Opportunity Commission ("EEOC").

5.   After investigation, the Division of Human Rights found that probable cause existed to believe that Respondent had engaged in unlawful discriminatory practices.   The Division thereupon referred the case to public hearing.

6.   On March 21, 2013 the commissioner of the New York State Division of Human Rights adopted a Recommended Order of Dismissal for Administrative Convenience to allow the plaintiff to pursue federal and state remedies concurrently in the Eastern District of New York.

7.   Plaintiff received notice of right to sue from the EEOC on April 8, 2013.  A copy of the notice of right to sue is annexed hereto as Exhibit 1.

8.   Any and all other prerequisites to the filing of this suit have been met.

EQUITABLE TOLLING

9.   To the extent that the Defendant argues that the plaintiff did not file her complaint with the EEOC within 300 days of the last discriminatory incident, plaintiff intents on invoking the doctrines of waiver, estoppel, and equitable tolling.[1]

---

[1] [F]iling timely charge of discrimination with the Equal Employment Opportunity Commission is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).

## PARTIES

### Crystal Persaud

10.     Plaintiff Crystal Persaud is a 32 year old female with disabilities, including

Borderline Intellectual Functioning (IQ 73) and Hearing Impairment.

11.     The Plaintiff resides with her Mother in St. Albans, Queens County, New York.

12.     At all relevant times, Ms. Persaud met the definitions of an "employee" and a

"qualified individual with a disability" under all applicable statutes.

### Wal-Mart

13.     Defendant Wal-Mart Stores, Inc. is a corporation with its headquarters located at

702 S.W. 8th Street, Bentonville, Arkansas 72716. Wal-Mart Stores, Inc. operates retail stores

located throughout the State of New York, including the Wal-Mart located at 77 Green Acres

Rd, Valley Stream, NY 11581.

14.     Defendant Wal-Mart Stores East, L.P. is a limited partnership existing under the

laws of Delaware.   Wal-Mart Stores East, L.P. operates retail stores located throughout the

State of New York, including the Wal-Mart located at 77 Green Acres Rd, Valley Stream, NY

11581.

15.     Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc. are collectively referred to

herein as "Wal-Mart".

16.     At all relevant times, Wal-Mart has met the definition of an "employer" under all

applicable statutes.

## CLASS-WIDE FACTUAL ALLEGATIONS

17.     Ms. Persaud and many others similarly situated are current and former

employees of Wal-Mart who have been hired by Wal-Mart through the New York State

Education Department, Office of Adult Career and Continuing Education Services-Vocational Rehabilitation (ACCESS-VR).

18.    ACCESS-VR provides Vocational Rehabilitation services to individuals who suffer from a "physical or mental impairment which for the individual constitutes or results in a substantial impediment to employment."[2]

19.    Wal-Mart knowingly applies for and receives the tax benefits of hiring disabled individuals through ACCESS-VR, including:

> (a) The New York State Workers with Disabilities Tax Credit (N.Y. Tax Law § 187-a); and
>
> (b) The Work Opportunity Tax Credit (26 U.S.C.A. § 51);

20.    Under 29 U.S.C.A. 51(d)(6) Wal-Mart is only eligible for a tax credit for hiring individuals who have "a physical or mental disability which, for such individual, constitutes or results in a substantial handicap to employment" and have been referred to Wal-Mart "upon completion of rehabilitative services pursuant to an individualized written plan for employment [IEP] under a State plan for vocational rehabilitation services..."

21.    Wal-Mart's application for and receipt of the Work Opportunity Tax Credit for Plaintiff and others similarly situated constitutes an admission that Plaintiff and those similarly situated each suffer from a physical or mental disability which constitutes or results in a substantial handicap to employment.

22.    The requirements for eligibility for the New York Workers With Disabilities Tax Credit (WETC) are virtually identical to the requirements for eligibility for the Work Opportunity Tax Credit (WOTC). In order qualify for the WETC, Wal-Mart must hire an individual who suffers from "a disability which constitutes or results in a substantial handicap

---

[2] 8 NYCRR 247.6 (b)(1).

to employment and" and has "completed...services under an individualized written rehabilitation plan approved by the education department..."

23.     Wal-Mart's application for and receipt of the WETC for Plaintiff and others similarly situated constitutes an admission that Plaintiff and those similarly situated suffer from a disability which constitutes or results in a substantial handicap to employment.

24.     Wal-Mart hires these disabled individuals for work in an integrated setting, in that (1) they are integrated with other workers rather than separated or segregated (2) the jobs performed are available to the general public (3) the disabled individuals are employed under the same working conditions as others in similar positions, and (4) the disabled individuals have "ongoing interaction, on the job site as part of their work responsibilities, with other workers without disabilities, supervisors, and the general public to the same degree as workers without disabilities in the same or comparable occupations."[3]

25.     "The provision of reasonable accommodations...is consistent with a determination of employment in an integrated setting."[4]

26.     All of the individuals who are referred by ACCESS-VR to Wal-Mart have been pre-screened and been determined to be able to perform the essential functions of the jobs in which they are placed with a reasonable accommodation.

27.     Despite the fact that Wal-Mart accepts the tax benefits of giving employment to ACCESS-VR referred individuals, it does not accept the responsibility of making reasonable accommodations for the known physical or mental limitations of these individuals.

---

[3] http://www.acces.nysed.gov/vr/current_provider_information/vocational_rehabilitation/ policies_procedures/ 0010_employment_outcome/policy.htm (last visited 5/20/2013).
[4] *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562 (2d Cir.2000); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2008).

28.     At the time of Ms. Persaud's employment and up to the present time, Wal–Mart has been subject to a nationwide consent decree pursuant to *EEOC v. Wal–Mart Stores, Inc.,* No. S99 CIV 0414, 2001 WL 1904140 (E.D.Cal. Dec.17, 2001). "The consent decree require[s] Wal–Mart, *inter alia,* not to engage in any employment practice that would violate the ADA, [and] to train Wal–Mart employees in ADA compliance."[5]

29.     Wal-Mart has the obligation, when it hired individuals referred by ACCESS-VR, to engage in an "interactive process" with these individuals and in that way to assess how the employees' disabilities could be reasonably accommodated.[6]

30.     Upon information and belief, Wal-Mart continues to discriminate against the Proposed Class in that it has not enacted and/or implemented procedures for engaging in an interactive process with individuals that are referred by ACCESS-VR.

31.     Wal-Mart has also refused to comply with the Second Circuit's opinion in *Brady v. Wal-Mart,* 531 F.3d 127, 135 (2008).   Upon information and belief, Wal-Mart has failed to properly train store managers and assistant store managers in how to properly address individuals with known disabilities who do not request accommodations.

32.     Neither Has Wal-Mart meaningfully complied with the consent decree issued in *EEOC v. Wal–Mart Stores, Inc.,* No. S99 CIV 0414, 2001 WL 1904140 (E.D.Cal. Dec.17, 2001) prohibiting it from engaging in any employment practice that would violate the ADA.

INDIVIDUAL FACTUAL ALLEGATIONS

33.     Crystal Persaud is a 33 year old female born on December 30, 1979.   She has not received a GED and has attended special education schools.

---

[5] Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 136 (2008)
[6] http://www.acces.nysed.gov/vr/current_provider_information/vocational_rehabilitation/policies_procedures/0010_employment_outcome/policy.htm (last visited 5/20/2013).

34.    Ms. Persaud is a qualified individual with a disability, namely hearing loss, learning disabilities, and borderline intellectual functioning, which substantially limit one or more of her major life activities. Her disability substantially limits, among other things, her self-esteem, cognitive abilities, ability to read, ability to write, ability to perform mathematical calculations, ability to retain information, ability to process instructions, and organization.

35.    In December 2005, at the age of 26, Crystal Persaud was evaluated by the New York State Education Department Office of Vocational and Educational Services for Individuals with Disabilities (VESID).   After a thorough evaluation, her primary disability was diagnosed as Borderline Intellectual Functioning (IQ 73) and Hearing Impairment.

36.    In conducting the evaluation, VESID also found that Ms. Persaud would need to be in a supported environment.   More specifically, Ms. Persaud qualified for "supported employment" because of her abilities, form discrimination, spatial discrimination, ability to sustain moderate work, emotional endurance for varied tasks, ability to handle pressure, frustration tolerance, ability to follow multi-step direction, problem solving ability, ability to follow diagrams, measuring ability, numerical ability, and independent traveling skills.

37.    On May 1, 2007 Crystal was hired by Wal-Mart as a Garden Clerk.  She was assisted in her job placement by her VESID Counselor.  The counselor accompanied her to the Wal-Mart store in Green Acres, New York, and helped her fill out the job application.  The VESID Counselor also accompanied her to her interview, and met with the Wal-Mart interviewers.

38.    Upon information and belief, Wal-Mart applied for and received the WETC and the WOTC for hiring Ms. Persaud.

39.     Despite knowing that Ms. Persaud had a disability at the time of hiring Wal-Mart never engaged in the interactive process with Ms. Persaud to determine the nature of her disability and whether a reasonable accommodation could be made.   Wal-Mart never provided any accommodations for the Plaintiff's disability.

40.     Shortly after she was hired as a Garden Clerk, Ms. Persaud's duties were changed without consulting either Ms. Persaud or ACCESS-VR/VESID from that of clerk to that of a greeter.   She was then accused by Wal-Mart of negligently allowing a customer to steal a television, and was then placed as a stock clerk in the housewares department.   Again, neither Ms. Persaud nor ACCESS-VR/VESID were consulted prior to changing her duties.

41.     Ms. Persaud was repeatedly reprimanded both verbally and in writing when she was unable to meet Wal-Mart's expectations.

42.     Sometime during her employment Crystal had a confrontation with an assistant Manager – Carmen Garcia, and was suspended.   The plaintiff's mother, concerned for her daughter and for the apparent insensitivity of Wal-Mart to Crystal's disabilities (which included as previously mentioned, low emotional endurance for varied tasks, ability to handle pressure, and low frustration tolerance) went to the store personally to plead for Crystal's job back.   At that time she advised the store representatives that Crystal was "not like other people."

43.     After the meeting the Store Manager intervened and reinstated Crystal. However, even after this reinstatement, Wal-Mart made absolutely no attempt to evaluate or determine whether a reasonable accommodation could be made to Crystal.

44.     After the Plaintiff's Mother intervened and Crystal was allowed to keep her job, Crystal was repeatedly bullied and verbally abused by managers and employees of Wal-Mart. Ms. Garcia would mock the plaintiff, saying that she needed her "mother" to protect her.   The

store management divulged the information regarding the Plaintiff's Mother's intervention to other store personnel, who also belittled and made fun of Ms. Persaud for needing her mother to come to the store on her behalf.

45.    The abuse by Carmen Garcia became so difficult for the plaintiff that towards the end of her employment, she would cry to her mother and say "I don't want to go to work."

46.    Despite Crystal's limitations in her emotional endurance for varied tasks, ability to handle pressure, frustration tolerance, and ability to follow multi-step directions, Wal-Mart made no accommodation for Crystal.  Instead, Crystal would be working in one department "straightening it up" only to be pulled to another department by another manager to handle another task.  She was often given instructions which were difficult to follow.  She was not allowed to dedicate herself to the simple task of straightening her department, and yet was often reprimanded if her department was in disarray.

47.    Crystal did not have time to unload two carts in her department on the night of January 30, 2011.  Before leaving, she informed an assistant manager that the carts were in her department.  The next morning, however, she was called into Carmen Garcia's office.  "Lulu" the night manager was also present.  Crystal was told to sit down.  Carmen Garcia, with a vengeful smile, held up a cell phone with a picture of the shopping carts that were left in the department within inches of Crystal's face, and gleefully announced "gotcha!"  She said "you know what this means, don't you?" and asked Crystal for her badge and identification.  "Lulu" then asked Carmen Garcia "do you need her anymore?", to which Ms. Garcia responded "No she can just go her way."  Crystal slid her ID across the table and left the store.

48.    Wal-Mart also contested Ms. Persaud's eligibility for Unemployment Insurance benefits on the basis that it had good cause to terminate the plaintiff.

49.     A hearing was held before the New York State Department of Labor, Unemployment Insurance Appeal Board on August 3, 2011.  The Administrative Law Judge found that Wal-Mart had fired Ms. Persaud because she walked out of a reprimand session conducted by Carmen Garcia who had tried unsuccessfully to get rid of her the year before, and that reason for termination did not rise to the level of disqualifying misconduct.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings the First and Second causes of action, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of all individuals who have been employed Wal-Mart within the State of New York and who were originally hired by Wal-Mart through a VESID referral.    The class includes all such individuals who have been employed by Wal-Mart at any time during the three year period prior to the initial filing of the plaintiff's complaint with the New York State Division of Human Rights (January 30, 2012).[7]

51.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

52.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

---

[7] The Plaintiffs reserve the right to propose subclasses or to re-define the class upon motion for class certification, consistent with the Court's discretion to alter or modify the class, or to create subclasses. see *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010).

53.     Upon information and belief, the size of the Rule 23 Class is at least 500 individuals.[8] Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

54.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

55.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a) Whether Defendant availed itself of the tax benefits of hiring people with known disabilities;

(b) Whether Defendant created and/or implemented procedures to assure that these individuals received reasonable accommodations under the ADA and the NYSHRL.

(c) Whether Defendant has refused to comply with the Second Circuit's decision in Wal-Mart v. Brady which in essence ordered Wal-Mart to engage in an interactive process with all employees with known disabilities, regardless of whether an accommodation was requested;

(d) Whether Wal-Mart's violations of the NYSHRL and the ADA as alleged herein constitute violations of the consent decree issued in *EEOC v. Wal– Mart Stores, Inc.,* No. S99 CIV 0414, 2001 WL 1904140 (E.D.Cal. Dec.17, 2001).

---

[8] Information received from the New York State Education Department indicates that ACCESS-VR placed 1353 individuals with disabilities with Wal-Mart for the period of January 1, 2006 to February 2013.

(e) Whether Defendant's failure to enact and/or implement policies regarding the interactive process to be engaged in with individuals hired through VESID constitutes of failing to pay workers was willful or with reckless disregard of the law; and

56. The Homogeneous nature of class has already been established by the qualification, evaluation, and placement procedures of ACCESS-VR.

57. Wal-Mart knew each member of the class had been determined to be disabled based upon the referral by ACCESS-VR to Wal-Mart.

58. Wal-Mart regarded each member of the class as having a disability based upon the referral by ACCESS-VR to Wal-Mart.

59. Wal-Mart knew or regarded each member of the class as having a disability based upon the application by Wal-Mart for federal and state tax benefits based upon each class members' disability.

60. The actions for class relief alleged herein are typical of the claims of the Rule 23 Class plaintiff seeks to represent. Plaintiff and all of the Rule 23 Class members (a) all suffer from a disability that results in a substantial handicap to employment; (b) notwithstanding their disabilities, each member has been evaluated by ACCESS-VR and been determined to be qualified to perform their essential duties with a reasonable accommodation; (c) each plaintiff was in-fact hired by Wal-Mart through an ACCESS-VR referral, (d) each plaintiff has worked for Wal-Mart in the State of New York at times since January 30, 2009; (e) by virtue of the referral from ACCESS-VR, Wal-Mart knows that each class member has a disability; (f) by virtue of Wal-Mart's application for federal and state tax benefits, Wal-Mart acknowledges that each class member suffers from a "a physical or mental disability which, for such individual,

constitutes or results in a substantial handicap to employment"; (g) Wal-Mart has acted on grounds applicable to the class as a whole in failing to enact and/or implement procedures consistent with the nationwide consent decree to assure that it is in compliance with the ADA, and (h) Wal-Mart has acted on grounds applicable to the class as a whole in that it has refused to enact and/or implement procedures consistent with the Second Circuit's directive to engage in an interactive process with Plaintiff and the Rule 23 Class.

61.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Classes. Plaintiff understands that as class representative, she assumes a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiff recognizes that as class representative, she must represent and consider the interests of the class just as she would represent and consider her own interests.  Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the class. Plaintiff recognizes that any resolution of a class action must be in the best interest of the class. Plaintiff understands that in order to provide adequate representation, she must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial. Plaintiff has retained counsel competent and experienced in complex class actions. There is no conflict between Plaintiff and the Rule 23 members.

62.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the ADA and the NYSHRL.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

63.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## AS AND FOR A FIRST CAUSE OF ACTION

(Class Action for Failure to Accommodate in violation of ADA)

64.     Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

65.     Plaintiff hereby repeats and realleges each and every prior allegation as if fully set forth herein.

66.     Plaintiff and all those similarly situated are persons with disabilities under the meaning of the ADA.

67.     Defendant Wal-Mart regarded Plaintiff and all those similarly situated as being disabled.

68.     Defendant Wal-Mart knew that the Plaintiff and all those similarly situated were disabled.

69.     Plaintiff and all those similarly situated could perform the essential functions of their jobs with reasonable accommodations.

70.     Defendant Wal-Mart failed to enact and/or implement policies regarding engaging in an interactive process with plaintiff and those similarly situated.

71.     Defendant Wal-Mart failed to reasonably accommodate the actual or perceived disabilities of the Plaintiff and all those similarly situated.

72.     Defendant Wal-Mal't's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff and each person similarly situated is entitled to an award of punitive damages.

- 14 -

73.     Plaintiff and each person similarly situated is entitled to declaratory and injunctive relief requiring Wal-Mart to enact and implement procedures with regard to all class members consistent with its obligation to engage in the interactive process as held in Brady v. Wal-Mart.

## AS AND FOR A SECOND CAUSE OF ACTION

(Class Action for Failure to Engage in the Interactive Process in violation of NYSHRL)

74.     Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

75.     Plaintiff and all those similarly situated are persons with disabilities under the meaning of the NYSHRL.

76.     Defendant Wal-Mart regarded Plaintiff and all those similarly situated as being disabled.

77.     Defendant Wal-Mart knew that the Plaintiff and all those similarly situated were disabled.

78.     Defendant Wal-Mart failed to enact and/or implement policies regarding engaging in an interactive process with plaintiff and those similarly situated.

79.     Plaintiff and each person similarly situated is entitled to declaratory and injunctive relief requiring Wal-Mart to enact and implement procedures to engage in an interactive process with all VESID referrals.

## AS AND FOR A THIRD CAUSE OF ACTION

(Harassment in Violation of the ADA)

80.     Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

81.     Plaintiff is a qualified individual with a disability,

82.     She was subjected to unwelcome harassment.

83.     The harassment was based on her disability.

84.     The harassment was severe and pervasive.

85.     Defendant Wal-Mart created, fostered, condoned, accepted, ratifying and/or otherwise failed to prevent or to remedy the aforementioned hostile Work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her disability.

86.     As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

87.     As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress and emotional pain and suffering.

88.     Defendant Wal-Ma1't's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Harassment in Violation of the NYSHRL)

89.     Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

90.     Plaintiff is a qualified individual with a disability,

91.     She was subjected to unwelcome harassment.

- 16 -

92.    The harassment was based on her disability.

93.    The harassment was severe and pervasive.

94.    Defendant Wal-Mart created, fostered, condoned, accepted, ratifying and/or otherwise failed to prevent or to remedy the aforementioned hostile Work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her disability.

95.    As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

96.    As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress and emotional pain and suffering.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Discrimination in Violation of the ADA)

97.    Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

98.    Plaintiff is a qualified individual with a disability.

99.    Plaintiff could perform the essential functions of her job with or without a reasonable accommodation.

100.    She was fired because of her disability.

101. As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress and emotional pain and suffering.

102. Defendant Wal-Ma1't's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Discrimination in Violation of the NYSHRL)

103. Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

104. Plaintiff is a qualified individual with a disability.

105. Plaintiff could perform the essential functions of her job with or without a reasonable accommodation.

106. The behavior for which the Plaintiff was terminated was caused by the Plaintiff's disability.

107. As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

108. As a direct and proximate result of Defendant Wal-Mart's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress and emotional pain and suffering.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Negligent Hiring, Retention and Supervision)

109.    Plaintiff hereby repeats and realleges each and every preceding allegation, inclusive, as if fully set forth herein.

110.    In hiring, training and supervising supervisory personnel such as Carmen Garcia,

111.    Defendant Wal-Mart has a duty to prevent such personnel from engaging in discrim1natory and/or tortious conduct.

112.    Defendant Wal-Mart negligently and/or recklessly breached its duty of care in hiring, training, retaining and supervising Carmen Garcia, who acted in a discriminatory and/or tortious manner toward Plaintiff.

113.    Defendant Wal-Mart knew or should have known that Defendant Garcia would act and/or acted 1n a discriminatory and/or tortious manner toward Plaintiff, and failed to exercise adequate care to prevent and/or remedy such conduct by its supervisory personnel.

114.    As a direct and proximate result of Defendant Wal-Mart's breach of its duty of care, Plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

115.    As a direct and proximate result of Defendant Wal-Mart's breach of its duty of care, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress and emotional pain and suffering.

116.    Defendant Wal-Mart's negligence was reckless and in knowing disregard of its legal obligations to take steps to prevent such conduct under both federal and state law, for which Plaintiff is entitled to an award of punitive damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York,

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct,

C. An order directing Defendants to create and implement procedures for engaging in the interactive process with individuals referred by VESID,

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment,

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her severe mental anguish and emotional distress,

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest,

G. An award of punitive damages for plaintiff and each member of the prospective class up to the Maximum of $300,000.00 per class member.

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiffs reasonable attorneys' fees to the fullest extent permitted by law, and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: Glen Cove, New York
      July 2, 2013

                Respectfully submitted,
                STEVEN J. MOSER, P.C.

                BY: Steven John Moser
                Three School Street, Suite 207B
                Glen Cove, NY  11542
                (516) 671-1150
                (800) 597-6958
                F (516) 882-5420
                stevenjmoserpc@gmail.com
                *Attorneys for Plaintiffs*